UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GRACE SCOTT | CIVIL ACTION |
| VERSUS | CASE NO. 20-2692 |
| WESTBANK FISHING LLC et al. | SECTION: "G" |

# ORDER

In this litigation, Plaintiff Grace Scott ("Plaintiff") bring claims individually and on behalf of her deceased husband, Robert Scott ("Scott"), against Defendant Westbank Fishing, LLC ("Defendant").[1] Plaintiff alleges that Scott was employed by Defendant as a chef aboard the vessel F/V KITTIWAKE, and died as a result of complications from COVID-19 which he contracted aboard the F/V KITTIWAKE.[2] Before the Court is Plaintiff Grace Scott's "Motion to Strike Defendant's Supplemental Witness List."[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion.

## I. Background

Plaintiff alleges that her husband Robert Scott was employed by Defendant as a chef aboard the F/V KITTIWAKE, a vessel owned and operated by Defendant.[4] Plaintiff alleges that in July 2020, another crew member aboard the F/V KITTIWAKE began showing symptoms consistent with COVID-19, and that the crew member remained working "without proper or adequate

---

[1] Rec. Doc. 1.

[2] *Id.* at 4.

[3] Rec. Doc. 38.

[4] *Id.*

quarantine measures in place" for at least a day before the F/V KITTIWAKE returned to shore.[5] Plaintiff further alleges that two days later, a crew member from an unknown vessel ("Vessel X") joined the crew of the F/V KITTIWAKE to work alongside Scott.[6] However, Plaintiff alleges that Vessel X had recently returned to shore to seek medical care for a different crew member who was also demonstrating symptoms consistent with COVID-19.[7]

Plaintiff alleges that on July 12, 2020, Scott tested positive for COVID-19, and was hospitalized and placed on a ventilator days later.[8] Plaintiff alleges that Scott's kidneys began to fail and he underwent a surgery for the insertion of a dialysis catheter.[9] Nevertheless, Plaintiff avers that Scott's heart and lungs began to fail, and he later died while being transferred to University Medical Center in New Orleans for further treatment.[10] Plaintiff asserts claims for negligence under the Jones Act as well as unseaworthiness under general maritime law.[11]

Pursuant to the Court's scheduling order in this matter, witness and exhibit lists were due on May 12, 2022, and the discovery deadline was May 25, 2022.[12] Both parties filed their witness and exhibit lists on May 12, 2022.[13] On June 17, 2022, without requesting leave of Court, Defendant filed a supplemental witness and exhibit list.[14] That same day, Plaintiff filed the instant

---

[5] *Id.*

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] Rec. Doc. 16 at 3.

[13] Rec. Docs. 25, 26.

[14] Rec. Doc. 37.

motion to trike the supplemental witness and exhibit list.[15] On June 21, 2022, Defendant filed an opposition.[16] On June 22, 2022, with leave of Court, Plaintiff filed a reply.[17]

## II. Parties' Arguments

### A.   *Plaintiff's Arguments in Support of the Motion to Strike*

In the motion, Plaintiff argues that the Court should strike the supplemental witness list because it was filed after the discovery deadline and included a "new purported 'fact witness' not previously disclosed'" who is now under subpoena to be deposed on June 24, 2022.[18] Plaintiff argues that Defendant cannot add additional witnesses absent good cause to amend the scheduling order, and that Defendant here does not have good cause.[19] Plaintiff contends that Defendant has "no plausible justification" for the failure to timely identify additional witnesses, as the case has been pending for more than a year and a half, and more than twelve depositions have been taken.[20] Plaintiff contends that the fact that Defendant's previously disclosed witnesses did not provide the testimony Defendant was hoping for is not sufficient to establish good cause.[21] Plaintiff also argues that permitting Defendant's new witnesses "may serve to necessitate an extension of pretrial deadlines and the trial date in this matter."[22]

### B.   *Defendant's Arguments in Opposition to the Motion for Summary Judgment*

---

[15] Rec. Doc. 38.

[16] Rec. Doc. 41.

[17] Rec. Doc. 45, 47.

[18] Rec. Doc. 38-1 at 4.

[19] *Id.* at 4–5.

[20] *Id.* at 5.

[21] *Id.*

[22] *Id.*

In opposition, Defendant notes that it added three additional witnesses on its supplemental witness list—Johnny Williams ("Williams"), Terrence Lampkin ("Lampkin"), and Zyria Charles ("Charles").[23] Defendant contends that Williams and Charles were "known to Plaintiff before she filed the instant motion," and that Plaintiff "did not object to these witnesses and counsel for both parties had even agreed to arrange their respective depositions even though the Court's discovery deadline had passed."[24] Defendant notes that although Plaintiff "takes particular issue with upcoming deposition of Mr. Lampkin," Lampkin possess critical evidence in the case, was not disclosed to Defendant, and Defendant only became aware of Mr. Lampkin on June 3, 2022, after conducting additional investigation.[25]

Defendant argues that there is good cause to permit the untimely addition of these witnesses.[26] First, Defendant represents that it only became aware of these witnesses and their importance to this matter after the depositions of three witnesses which were conducted close to the discovery deadline due to "unavoidable scheduling issues."[27] Defendant further argues that the identity of Charles and Lampkin and their knowledge of the underlying facts were "most likely known to Plaintiff when this lawsuit was filed," but they were never disclosed to Defendant.[28] Furthermore, Defendant argues that evidence from these witnesses is critical.[29] Defendant explains that although Plaintiff's expert opines that Scott first developed COVID-19 symptoms on

---

[23] Rec. Doc. 41 at 1.

[24] *Id.* at 2.

[25] *Id.*

[26] *Id.* at 7.

[27] *Id.*

[28] *Id.*

[29] *Id.* at 8.

July 12, 2020, testimony from Lampkin will show that Scott had symptoms prior to this date.[30] Furthermore, according to Plaintiff, testimony from Williams will support Defendant's theory that Scott visited his stepdaughter on July 2, 2020 when she was ill with COVID-19.[31] Lastly, Defendant argues that "Zyria Charles, a high school student, was living in the same house with Mr. Scott around the time he was infected, thus providing another, reasonable explanation to the source of Mr. Scott's infection."[32]

Defendant argues that Plaintiff will not suffer prejudice, as the parties have previously agreed to depositions of Zyria Charles and Johnny Williams.[33] Defendant contends that the deposition of Lampkin was set for a date that Plaintiff's counsel had previously made available for the deposition of a different witness, and that the deposition was "unilaterally noticed because [Lampkin] was a flight risk."[34] Defendant contends that when defense counsel spoke to Lampkin on June 7, 2022, Lampkin stated that "the lawyer that's representing Bobby Scott" told him not to provide his address to Defendant's counsel.[35] Lastly, Defendant states that there is no need for a continuance in this case, as there is "adequate time to conduct these brief, although important, depositions before trial."[36]

### C.   *Plaintiffs Arguments in Further Support of the Motion*

In reply, Plaintiff argues that Defendant's opposition is "replete with inaccuracies,

---

[30] *Id.*

[31] *Id.* at 8.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.* at 5.

[36] *Id.*

misleading/mischaracterizing statements and half-truths."[37] Plaintiff contends that, contrary to Defendant's assertions, Plaintiff's counsel had no knowledge of Lampkin and only learned of his connection to the case after Defendant's counsel contacted Lampkin.[38] Plaintiff further represents that that he never told Lampkin not to give his address to Defendant's counsel.[39] Plaintiff further contends that even though Defendant discovered Lampkin on June 3, 2022, Defendant did so by investigating phone records that were voluntarily produced by Plaintiff almost a year ago.[40] Nevertheless, Plaintiff argues that Defendant failed to contact Lampkin until after the discovery deadline passed.[41] Thus, Plaintiff contends that the Court should not allow Defendant add Lampkin as a witness.

Plaintiff also argues that the Court should not allow Defendant to add Johnny Williams as a witness.[42] Although Plaintiff represents that it did "*previously* agree to allow his deposition to go forward, albeit after the deadline," Plaintiff now objects to allowing Williams as a witness given "Defense counsel's newfound attempts to jam Plaintiff/Plaintiff's counsel" with Lampkin's deposition.[43]

Plaintiff further contends that the Court should not allow Defendant to add Kerrie Scott as a witness, given that Plaintiff's counsel has "no substantive knowledge of her at all" and she has "never previously been disclosed as a witness and her deposition has never bene requested prior

---

[37] Rec. Doc. 47-2 at 1.

[38] *Id.* at 2.

[39] *Id.*

[40] *Id.*

[41] *Id.* at 3.

[42] *Id.* at 5.

[43] *Id.*

to the deadline."[44]

Nevertheless, Plaintiff's counsel represents that he is still willing to participate in depositions of Sharelle Charles and Zyria Charles "per defense counsel's previous requests . . . even though both of these names were not disclosed until well after Defendant's submission of its May 12, 2022 Witness List."[45]

However, Plaintiff argues that any other depositions will be prejudicial to Plaintiff.[46] Plaintiff's counsel notes that he is "primarily handling this case on his own and simply does not have the time or resources to continue learning about new witnesses and travelling the state [to] tak[e] depositions," as that "was and is the whole point of the discover process which [Defendant] simply failed to timely complete."[47]

### III. Law & Analysis

Federal district courts have the inherent power to enforce their scheduling orders,[48] and Federal Rule of Civil Procedure 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent."[49] Whether to extend a deadline set forth in a scheduling order is within the sound discretion of the trial court.[50] In deciding whether to extend a deadline, the Court's "judgment range is exceedingly wide," for it "must consider not only the facts of the

---

[44] *Id.*

[45] *Id.*

[46] *Id.* at 6.

[47] *Id.*

[48] *See Flaska v. Little River Marine Const. Co.*, 389 F.2d 885, 886 & n.3 (5th Cir. 1968) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962)).

[49] Fed. R. Civ. P. 16(b)(4).

[50] *United States v. Alix*, 86 F.3d 429, 434 (5th Cir.1996).

particular case but also all of the demands on counsel's time and the court's."[51] In determining whether to permit an untimely disclosed witness to testify at trial, courts in the Fifth Circuit consider (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice."[52]

Pursuant to the Court's scheduling order, witness and exhibit lists were due on May 12, 2022, and the discovery deadline was May 25, 2022.[53] Both parties filed their witness and exhibit lists on May 12, 2022.[54] On June 17, 2022, without requesting leave of Court, Defendant filed a supplemental witness and exhibit list.[55] The same day, Plaintiff filed the instant motion to strike Defendant's supplemental witness and exhibit list.[56] Although labeled as a motion to strike, Plaintiff's motion is more properly considered a motion to exclude the testimony of these untimely disclosed witnesses.

The dispute before the Court focuses on four witnesses named in the supplemental witness list that were not in Defendant's original witness list: Johnny Williams, Terrence Lampkin, Zyria Charles, and Kerrie Scott. The Court's scheduling order states as follows:

> The Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause shown.
>
> . . .

---

[51] *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000) (internal citations omitted).

[52] *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007).

[53] Rec. Doc. 16 at 3.

[54] Rec. Docs. 25, 26.

[55] Rec. Doc. 37.

[56] Rec. Doc. 38.

> Deadlines, cut-off dates, or other limits fixed herein may only be extended by the Court upon timely motion filed in compliance with Local Rules and upon a showing of good cause. Continuances will not normally be granted. The Court requires strict adherence to scheduling orders and deadlines.[57]

Nevertheless, it is apparent from both parties' briefing that the parties continued to conduct depositions after the Court's May 25, 2022 deadline without requesting a continuance or demonstrating good cause. Again, without requesting leave of Court, Defendant filed a supplemental witness and exhibit list which contains witnesses and exhibits not identified in Defendant's original timely submission.[58] Plaintiff "has no objection to [Defendant]'s proposed supplemental witnesses listed in their Supplemental Witness List who have already been deposed or who were disclosed to Plaintiff as potential witnesses by [Defendant] prior to the May 25, 2022 discovery deadline."[59] Plaintiff also does not object to Defendant's supplemental list of exhibits.[60] Nevertheless, Plaintiff does object to the addition of witnesses listed in the supplemental witness list whose identities were not disclosed to Plaintiff prior to the May 25, 2022 discovery deadline.[61] Specifically, Plaintiff objects to the addition of Johnny Williams, Terrence Lampkin, and Kerrie Scott.

In determining whether an untimely witness should be permitted, Courts in the Fifth Circuit consider (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a

---

[57] Rec. Doc. 16 at 4–5.

[58] Rec. Doc. 37.

[59] Rec. Doc. 38-1 at 1, n.1.

[60] *Id.*

[61] *Id.*

continuance to cure such prejudice."[62]

The Court begins by noting that Defendant provides no information about Kerrie Scott and thus fails to demonstrate good cause to add Kerrie Scott to Defendant's witness list. Thus, the Court will grant Plaintiff's motion as to Kerrie Scott.

As to Williams and Lampkin, Defendant appears to suggest that it failed to timely identify these witnesses because Defendant did not discover until May 27, 2022 that these witnesses had relevant information. The Court notes that May 27, 2022 was after the discovery deadline in this case.[63] In any event, Defendant explains that it conducted depositions of Charlander Briggs and Shelly Charles, two of Scott's stepdaughters, on May 27, 2022.[64] Defendant states that during these depositions, "it was confirmed" that Shelly Charles began having COVID-19 symptoms on June 29, 2020, and was sent home from work on July 2, 2020, due to the severity of her symptoms.[65] Defendant further argues that Scott's cell phone records show that his phone traveled from his home in Abbeville, Louisiana to Houma, Louisiana.[66] Defendant notes that Shelly Charles denied that her father visited her in Houma during this time period.[67] Defendant contends that this testimony caused Defendant to make a "closer review of the phone calls made and received by [Scott] on July 2, 2022."[68] This review "revealed that [Scott] had a telephone call with

---

[62] *Betzel*, 480 F.3d at 707.

[63] Rec. Doc. 16.

[64] Rec. Doc. 41 at 3.

[65] *Id.*

[66] *Id.* at 4.

[67] *Id.*

[68] *Id.*

Johnny Williams" on July 2, 2022.[69] Additionally, "upon further review of the disputed phone records, the phone number of Mr. Terrence Lampkin was identified as a number frequently engaged in calls with [Scott]'s cell phone when he was diagnosed with COVID-19."[70] Thus, Defendant contends that it could not have identified these witnesses in accordance with the deadline in the scheduling order because it did not become aware of these witnesses until after the deadline passed.

Furthermore, Defendant contends that the "importance of the evidence is significant."[71] Defendant explains that Plaintiff's expert opines that Scott first experienced COVID-19 symptoms on July 12, 2020.[72] Defendant argues that Williams and Lampkin are critical witnesses because Lampkin "will show that [Scott] had symptoms before this date,"[73] and Williams will contradict Shelly Charles' testimony that Scott did not visit her on July 2, 2020.[74]

The Court finds that Defendant has not established good cause to amend its witness list to include Lampkin and Williams. Although Defendant suggests that it did not discover Williams and Lampkin until the depositions conducted on May 27, 2022, the phone records from which Defendant discovered these witnesses were produced to Defendant nearly a year ago, on August 3, 2021.[75] Thus, Defendant could have investigated the phone records earlier to find evidence supporting when and how Scott could have been exposed to COVID-19. Additionally, although

---

[69] *Id.*

[70] *Id.* at 5.

[71] *Id.* at 8.

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] Rec. Doc. 47-2 at 3.

Defendant argues that these witnesses are "critical," Defendant does not explain why that is the case. Defendant vaguely asserts that Lampkin's testimony "will show that Mr. Scott had symptoms before this date," but does not explain the basis for this suggestion.[76] Similarly, Defendant vaguely asserts that Williams' testimony "will contradict" evidence that Scott did not visit Shelly Charles on July 2, 2020, but does not explain the basis for this suggestion.[77] Thus, the Court cannot determine whether these witnesses are, in fact, critical, or whether Defendant is simply searching for additional evidence. Furthermore, the Court finds that the addition of these witnesses at this late stage would be prejudicial to Plaintiff because Plaintiff would not have the opportunity to conduct further discovery based on these witnesses' testimony prior to the July 25, 2022 trial in this matter. Thus, the Court will exclude Williams and Lampkin as well.

## V. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that Plaintiff Grace Scott's "Motion to Strike Defendant's Supplemental Witness List"[78] is **GRANTED** to the extent that it seeks to exclude Kerrie Scott, Terrence Lampkin, and Johnny Williams as witnesses.[79]

**NEW ORLEANS, LOUISIANA**, this __23rd__ day of June, 2022.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[76] Rec. Doc. 41 at 8.

[77] *Id.*

[78] Rec. Doc. 38.

[79] Because Plaintiff consents to the addition of other witnesses and exhibits not listed in Defendant's original witness and exhibit list, the Court will permit Defendant to add those witnesses and exhibits.