**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GRACE SCOTT** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 20-2692** |
| **WESTBANK FISHING LLC et al.** | **SECTION: "G"** |

## ORDER AND REASONS

In this litigation, Plaintiff Grace Scott ("Plaintiff") bring claims individually and on behalf of her deceased husband, Robert Scott ("Scott"), against Defendant Westbank Fishing, LLC ("Defendant").[1] Plaintiff alleges that Scott was employed by Defendant as a chef aboard the vessel F/V KITTIWAKE and died as a result of complications from COVID-19 which he contracted aboard the F/V KITTIWAKE.[2] Before the Court is Defendant's "Motion for Reconsideration."[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

Plaintiff alleges that her husband Robert Scott was employed by Defendant as a chef aboard the F/V KITTIWAKE, a vessel owned and operated by Defendant.[4] Plaintiff alleges that in July

---

[1] Rec. Doc. 1.

[2] *Id*. at 4.

[3] Rec. Doc. 49.

[4] *Id.*

2020, another crew member aboard the F/V KITTIWAKE began showing symptoms consistent with COVID-19 and that the crew member remained working "without proper or adequate quarantine measures in place" for at least a day before the F/V KITTIWAKE returned to shore.[5] Plaintiff further alleges that two days later, a crew member from an unknown vessel ("Vessel X") joined the crew of the F/V KITTIWAKE to work alongside Scott.[6] However, Plaintiff alleges that Vessel X had recently returned to shore to seek medical care for a different crew member who was also demonstrating symptoms consistent with COVID-19.[7]

Plaintiff alleges that on July 12, 2020, Scott tested positive for COVID-19 and was hospitalized and placed on a ventilator days later.[8] Plaintiff alleges that Scott's kidneys began to fail and he underwent a surgery for the insertion of a dialysis catheter.[9] Nevertheless, Plaintiff avers that Scott's heart and lungs began to fail, and he later died while being transferred to University Medical Center in New Orleans for further treatment.[10] Plaintiff asserts claims for negligence under the Jones Act as well as unseaworthiness under general maritime law.[11]

Pursuant to the Court's scheduling order in this matter, witness and exhibit lists were due on May 12, 2022, and the discovery deadline was May 25, 2022.[12] Both parties filed their witness

---

[5] *Id.*

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] Rec. Doc. 16 at 3.

and exhibit lists on May 12, 2022.[13] On June 17, 2022, without requesting leave of Court, Defendant filed a supplemental witness and exhibit list.[14] That same day, Plaintiff filed a motion to strike Defendant's supplemental witness list to the extent it included witnesses not previously disclosed to Plaintiff prior to the May 25, 2022 discovery deadline.[15] On June 23, 2022, the Court granted Plaintiff's motion to strike Kerrie Scott, Terrence Lampkin, and Johnny Williams as witnesses.[16]

On June 27, 2022, Defendant filed the instant Motion for Reconsideration.[17] On June 30, 2022, Plaintiff opposed the motion.[18]

## II. Parties' Arguments

### A.    *Defendant's Arguments in Support of the Motion for Reconsideration*

Defendant brings the instant motion "to provide the Court with sufficient proof of the expected testimony, explain its importance, and to demonstrate that [Defendant] is not engaged in a fishing expedition."[19] Defendant notes that it did not take the deposition of Plaintiff's step-daughter, Shelly Charles, until May 27, 2022 "by agreement of all counsel because of a medical emergency in Plaintiff counsel's immediate family around the same time and difficulty encountered by Plaintiff's counsel in arranging the depositions of Plaintiff's daughters due to their

---

[13] Rec. Docs. 25, 26.

[14] Rec. Doc. 37.

[15] Rec. Doc. 38.

[16] Rec. Doc. 48.

[17] Rec. Doc. 49.

[18] Rec. Doc. 55.

[19] Rec. Doc. 49-1 at 1.

schedules."[20] Defendant contends that it "did not have any reason to know of or contact Williams

and Lampkin until after Shelly's deposition."[21] Defendant contends, however, that at Shelly

Charles' deposition, she revealed that she began having COVID-19 symptoms on June 29, 2020

and was sent home from work on July 2, 2020.[22] Defendant notes that although Scott's phone

records indicate that his phone travelled from Abbeville to Houma and back on July 2, 2020, Shelly

Charles denied that Scott visited her in Houma.[23] Defendant notes that after this testimony, defense

counsel reviewed Scott's phone records and contacted Johnny Williams and Terrance Lampkin,

who were in contact with Scott on July 2, 2020.[24] Defendant argues that it "had no reason to contact

the phone numbers that connected with [Scott]'s cell phone on July 2, 2020 until Shelly testified

that [Scott] had [not] been to visit her."[25]

Defendant argues that when defense counsel contacted Johnny Williams, they learned that

Williams had information about Scott's trip to Houma. Defendant provides an affidavit from

Johnny Williams stating as follows:

> I specifically recall speaking with Bobby on the phone one day shortly before the
> July 4th Holiday in 2020. During that phone conversation, Bobby told me that he
> was driving and on his way to visit one of his stepdaughters who lived in Houma,
> Louisiana. Bobby said that he was going to check on his stepdaughter because she
> was sick.

---

[20] *Id*. at 2-3.

[21] *Id*. at 3.

[22] *Id.*

[23] *Id.*

[24] *Id*. at 3-4.

[25] *Id.*

Thus, Defendant argues that Williams' testimony is "critical," and the Court should permit his testimony.[26]

Defendant further argues that Terrence Lampkin should be allowed to testify.[27] Defendant explains that after Shelly Charles' deposition, Defendant also contacted Terrence Lampkin because Scott's phone records indicated that Scott and Lampkin had a phone conversation on July 2, 2020.[28] Defendant provides a transcript of defense counsel's phone call with Lampkin, in which Lampkin recounts that Scott told him that he had "a real bad headache" on July 11, 2020.[29] Defendant argues that Lampkin's testimony is significant because "it shifts the starting point of the analysis of Plaintiff's liability expert . . . by at least an entire day," as it suggests that Scott's symptoms began on July 11, 2020, rather than July 12, 2020.[30] Furthermore, Defendant argues that this testimony is "critical" because it contradicts Plaintiff's expected testimony that Scott did not experience COVID-19 symptoms before July 12, 2020.[31]

## B.    *Plaintiffs' Arguments in Opposition to the Motion for Reconsideration*

Plaintiff argues that the Court "has already considered all of Defendant's arguments in its thorough 12-page and well-reasoned opinion."[32] Plaintiff further contends that Defendant did not request Shelly Charles' deposition until May 16, 2022, which was after the witness list deadline in

---

[26] *Id.* at 5.

[27] *Id.*

[28] *Id.*

[29] *Id.* at 5–6.

[30] *Id.*

[31] *Id*. at 7.

[32] Rec. Doc. 55 at 1.

this matter but shortly before the discovery deadline.[33] Plaintiff further contends that Defendant identified Shelly Charles from the phone records that Plaintiff produced to Defendant in August of 2021, but Defendant nevertheless waited until days before the discovery deadline to request her deposition.[34] Plaintiff argues that it would be "patently unfair" to allow Lampkin and Williams as witnesses as they were disclosed to Plaintiff only after all deadlines had passed.[35] Plaintiff argues that such deadlines are meant to avoid "trial by ambush," and that these deadlines should not be ignored "simply because the Defendant does not like the evidence already generated in this case."[36]

### III. Legal Standard

Although the Fifth Circuit has noted that the Federal Rules "do not recognize a 'motion for reconsideration' *in haec verba*,"[37] it has consistently recognized that such a motion may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b).[38]

The Court has "considerable discretion" in deciding whether to grant a motion for reconsideration, but must "strike the proper balance between two competing imperatives: (1) finality and (2) the need to render just decisions on the basis of all the facts."[39] This Court's

---

[33] Rec. Doc. 55 at 3.

[34] *Id.*

[35] *Id.* at 5.

[36] *Id*.

[37] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990).

[38] *Id*. (Rules 59 and 60); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *3–4 (E.D. La. Apr. 5, 2010) (Rule 54).

[39] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

discretion is further bounded by the Fifth Circuit's instruction that reconsideration is "an extraordinary remedy that should be used sparingly,"[40] with relief being warranted only when the basis for relief is "clearly establish[ed]."[41] Courts in the Eastern District of Louisiana have generally considered four factors in deciding motions for reconsideration:

(1)     the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;

(2)     the movant presents newly discovered or previously unavailable evidence;

(3)     the motion is necessary in order to prevent manifest injustice; or

(4)     the motion is justified by an intervening change in controlling law.[42]

A motion for reconsideration, "'[is] not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.'"[43] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[44] "It is well settled that motions for reconsideration should not be used . . . to re-urge matters that have already been advanced by a party."[45] When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and

---

[40] *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

[41] *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369 R, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.).

[42] *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4  (citations omitted).

[43] *Templet*, 367 F.3d at 478–79.

[44] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (citation and internal quotation marks omitted).

[45] *Helena Labs. Corp. v. Alpha Sci. Corp.*, 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

should not be granted.[46]

## IV. Analysis

Defendant urges the Court to reconsider its June 23, 2022 Order granting Plaintiff's motion to strike certain witnesses who were not listed in Defendant's witness list. Although Defendant appears to accept the Court's decision to strike Kerrie Scott, Defendant requests that Terrence Lampkin and Johnny Williams be permitted to testify. Defendant argues that it "had no reason to contact the phone numbers that connected with Mr. Scott's cell phone on July 2, 2020" until Shelly Charles' deposition on May 27, 2022.[47] To begin, as the Court noted in its June 23, 2022 Order granting Plaintiff's motion to strike, the parties conducted this deposition after the Court's May 25, 2022 discovery deadline without requesting a continuance from the Court. Furthermore, as explained in the Court's June 23, 2022 Order, the Court does not agree that Defendant had "no reason" to contact Williams and Lampkin until after Shelly Charles' deposition. Defendant's defense in this case is that Scott could have been exposed to COVID-19 from somewhere or someone unaffiliated with his work on the F/V KITTWAKE. Thus, Defendant could have used Scott's phone records to investigate his activities in the weeks prior to his COVID-19 infection to discover alternative sources of infection. Defendant's failure to think to do so until Shelly Charles' deposition provides no good cause to amend Defendant's witness list to add these untimely witnesses. In any event, "[i]t is well settled that motions for reconsideration should not be used . . .

---

[46] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 481 (M.D. La. 2002). *See also Mata v. Schoch*, 337 B.R. 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented); *FDIC v. Cage*, 810 F. Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

[47] Rec. Doc. 49-1 at 4.

to re-urge matters that have already been advanced by a party."[48] Given that the Court has already

considered and rejected this argument, the Court declines to reconsider its June 23, 2022 Order on

this basis.

Defendant urges the Court to reconsider its decision given the importance of Lampkin and

Williams' testimony, explaining that the "instant motion is brought to provide the Court with

sufficient proof of the expected testimony, explain its importance, and to demonstrate that

Westbank is not engaged in a fishing expedition."[49] Defendant offers an affidavit from Williams

stating as follows:

> I specifically recall speaking with Bobby on the phone one day shortly before the
> July 4th Holiday in 2020. During that phone conversation, Bobby told me that he
> was driving and on his way to visit one of his stepdaughters who lived in Houma,
> Louisiana. Bobby said that he was going to check on his stepdaughter because she
> was sick.

Defendant further provides a transcript of defense counsel's phone call with Lampkin, in which

Lampkin recounts that Scott told him that he had "a real bad headache" on July 11, 2020.[50] As

discussed above, a motion for reconsideration, "'[is] not the proper vehicle for rehashing evidence,

legal theories, or arguments that could have been offered or raised before the entry'" of an Order.[51]

Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of

law or fact or to present newly discovered evidence."[52] Of course, Defendant could have provided

---

[48] *Helena Labs. Corp. v. Alpha Sci. Corp.*, 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[49] Rec. Doc. 49-1 at 1.

[50] *Id.* at 5–6.

[51] *Templet*, 367 F.3d at 478–79.

[52] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (citation and internal quotation marks omitted).

this information to the Court in its opposition to Plaintiff's motion to strike. In any event, the importance of the offered testimony is only one of the factors courts consider in analyzing whether there is good cause to allow an untimely disclosed witness to testify at trial,[53] and these additional details do not give the Court any reason to reconsider its analysis of the other factors.

Lastly, Defendant contends that "there will be no prejudice to Plaintiff in allowing these witnesses at trial because there is adequate time to permit their depositions to be taken" before trial.[54] The Court's June 23, 2022 Order already found that "the addition of these witnesses at this late stage would be prejudicial to Plaintiff because Plaintiff would not have the opportunity to conduct further discovery based on these witnesses' testimony prior to the July 25, 2022 trial in this matter."[55] When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[56] Thus, the Court declines to reconsider the June 23, 2022 Order.

Furthermore, the Court does not arbitrarily set deadlines in the scheduling order. The Court's orders and deadlines must be respected to ensure the orderliness and timeliness of all trials. The Court cannot tolerate or allow a party to ignore, disrespect, and disregard its deadlines and procedures with no good cause, especially if the effect is to surprise and unduly burden the other party.

---

[53] *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007) (noting that the relevant factors are (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice).

[54] Rec. Doc. 49-1 at 8.

[55] Rec. Doc. 48 at 12.

[56] *Livingston*, 259 F. Supp. at 481. *See also Mata*, 337 B.R. at 145; *Cage*, 810 F. Supp. at 747.

## V. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that Defendant's Motion for Reconsideration[57] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this <u>5th</u> day of July, 2022.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[57] Rec. Doc. 49.

11