## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GRACE SCOTT**                                    **CIVIL ACTION**

**VERSUS**                                         **NO. 20-2692**

**WESTBANK FISHING, LLC**                          **SECTION: "G"**

## ORDER AND REASONS

In this litigation, Plaintiff Grace Scott ("Plaintiff") bring claims individually and on behalf of her deceased husband, Robert Scott ("Scott"), against Defendant Westbank Fishing, LLC ("Defendant").[1] Plaintiff alleges that Scott was employed by Defendant as a chef aboard the vessel F/V KITTIWAKE, and died as a result of complications from COVID-19, which he contracted aboard the F/V KITTIWAKE.[2] Pending before the Court is Defendant's Motion for Partial Summary Judgment.[3] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies the motion in part.

## I. Background

Plaintiff alleges that her husband Robert Scott was employed by Defendant as a chef aboard the F/V KITTIWAKE, a vessel owned and operated by Defendant.[4] Plaintiff alleges that in July 2020, another crew member   aboard the F/V KITTIWAKE began showing symptoms consistent

---

[1] Rec. Doc. 1.

[2] *Id.* at 4.

[3] Rec. Doc. 28.

[4] Rec. Doc. 1.

with COVID-19, and that the crew member remained working "without proper or adequate quarantine measures in place" for at least a day before the F/V KITTIWAKE returned to shore.[5] Plaintiff further alleges that two days later, a crew member from an unknown vessel ("Vessel X") joined the crew of the F/V KITTIWAKE to work alongside Scott.[6] However, Plaintiff alleges that Vessel X had recently returned to shore to seek medical care for a different crew member who was also demonstrating symptoms consistent with COVID-19.[7]

Plaintiff alleges that on July 12, 2020, Scott tested positive for COVID-19, and was hospitalized and placed on a ventilator days later.[8] Plaintiff alleges that Scott's kidneys began to fail and he underwent a surgery for the insertion of a dialysis catheter.[9] Nevertheless, Plaintiff avers that Scott's heart and lungs began to fail, and he later died while being transferred to University Medical Center in New Orleans for further treatment.[10] Plaintiff asserts claims for negligence under the Jones Act as well as unseaworthiness under general maritime law.[11]

---

[5] *Id.*

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* at 5–6.

On May 17, 2022, Defendant filed the instant motion for partial summary judgment.[12] On June 21, 2022, Plaintiff opposed the motion.[13] On June 29, 2022, with leave of Court, Defendant filed a reply.[14]

## II. Parties' Arguments

### A.    *Defendant's Arguments in Support of the Motion for Summary Judgment*

Defendant argues that it is entitled to summary judgment on Plaintiff's request for damages in the form of (1) past medical expenses, (2) past maintenance, cure, and found, (3) funeral and burial expenses, and (4) nonpecuniary damages.[15] First, Defendant argues that past medical expenses are not available because there is no evidence that Plaintiff is liable for any costs incurred as a result of Scott's COVID-19 diagnosis or treatment.[16] Defendant argues that in discovery, Plaintiff represented that she had no "records, receipts, invoices, or other materials evidencing any charges or expenses incurred" as a result of Scott's death, and that Plaintiff never supplemented this response with any such records.[17] Defendant further points out that the billing statements of Abbeville General Hospital and University Medical Center, where Scott was treated, indicate that there is no outstanding balance owed.[18]

---

[12] Rec. Doc. 28.

[13] Rec. Doc. 43.

[14] Rec. Doc. 52; Rec. Doc. 60.

[15] Rec. Doc. 28. Because Plaintiff concedes that Defendant is entitled to summary judgment on Plaintiff's claim for funeral and burial expenses, Rec. Doc. 43 at 11, the Court will not recap the parties' arguments with respect to that claim.

[16] Rec. Doc. 28-1 at 7.

[17] *Id.*

[18] *Id.*

3

Next, Defendant argues that Plaintiff cannot recover for "maintenance" and "found."[19] Defendant argues that recovery for maintenance "includes the costs of a seaman's food, lodging, and lost wages until the injured seaman has reached maximum medical cure."[20] Defendant contends that "found" includes "the future value of meals that a seaman would have received aboard a vessel after he has reached maximum medical cure but is forced to pay out of pocket because he is unable to return to seaman's work."[21] Defendant argues that Plaintiff has no claim for "found" because Scott did not reach maximum cure prior to his death, and in any event, there is "no evidence that Plaintiff has incurred any costs associated with meals and lodging" from the date of Scott's diagnosis through his death.[22]

Defendant contends that Plaintiff's request for maintenance should be dismissed for two reasons. First, Defendant argues that Plaintiff has not shown that any maintenance-related expenses were incurred. Second, Defendant argues that it provided Scott with "full wages through the date of his death, rendering any 'past maintenance' claim moot."[23]

Lastly, Defendant argues that Plaintiff cannot recover nonpecuniary damages as a matter of law.[24] Specifically, Defendant argues that Plaintiff is not entitled to nonpecuniary damages such as past and future physical pain and suffering, past and future mental and emotional pain and

---

[19] *Id*. at 9.

[20] *Id.*

[21] *Id*. at 9–10.

[22] *Id.* at 10.

[23] *Id.*

[24] *Id.* at 12.

suffering, fear of impending doom, and loss of enjoyment of life.[25] Defendant argues that it is "well-established law in the Fifth Circuit that nonpecuniary damages are unavailable in a wrongful death action brought under both the Jones Act or general maritime law."[26] Defendant argues that Plaintiff's claims for pecuniary damages "in her own right" are not recoverable under the Jones Act and under general maritime law.[27]

**B.    *Plaintiff's Arguments in Opposition to the Motion for Summary Judgment***

Plaintiff first argues that she is entitled to recover damages for medical expenses. Plaintiff argues that the certified billing records show that Scott incurred $6,666.44 in medical expenses, $3,085.79 of which was paid by Scott's insurance provider, leaving a balance of $3,580.65 due.[28] Furthermore, Plaintiff argues that Scott's insurance policy was a "fringe benefit" of Scott's employment and thus, under the collateral source rule, Plaintiff's damages cannot be reduced based on expenses paid by Scott's insurance provider.[29]

Plaintiff further argues that she did not intend to assert claims for pain and suffering, fear of impending doom, and loss of enjoyment of life "in her own right," but rather for Scott's "pre-death pain and suffering, including his own fear of impending doom which he experienced prior

---

[25] *Id*. at 12.

[26] *Id*.

[27] *Id.* at 13.

[28] Rec. Doc. 43 at 7–8.

[29] *Id.* at 8–9.

to dying."[30] Plaintiff highlights the deposition testimony of one of Scott's doctors who stated that Scott endured "continuous and extreme pain and suffering."[31]

## C.    *Defendant's Arguments in Opposition to the Motion for Summary Judgment*

In reply, Defendant first argues that because Plaintiff does not dispute that Defendant is entitled to summary judgment on Plaintiff's claims for non-pecuniary loss in her own right, as well as funeral and burial expenses, the Court could grant summary judgment as to those categories of damages.[32]

Defendant further argues that "assuming Plaintiff demonstrates that cure or past medical expenses are owed, [Defendant] does not dispute the applicability of the collateral source rule for medical expenses paid by" Scott's insurer.[33] However, Defendant argues that any claims for medical expenses in excess of the sums paid by Scott's insurance provider should be dismissed.[34] Defendant argues that the parties agree that the total amount of medical care incurred by Scott is $34,616.26.[35] Specifically, Defendant contends that because the evidence demonstrates that Scott's insurer paid $31,035.61 and Plaintiff has an outstanding bill for $3,580.65, the Court should grant summary judgment as to Plaintiff's claim for past medical expenses in excess of $34,616.26.[36] Defendant further argues that the Fifth Circuit has held that a seaman is only entitled

---

[30] *Id.* at 11.

[31] *Id.*

[32] Rec. Doc. 60 at 1.

[33] *Id.* at 1–2.

[34] *Id.*

[35] *Id.* at 2.

[36] *Id.*

6

to recover for medical expenses actually incurred, and that if the medical provider accepts less than its billed amount and writes off the remaining balance, the seaman can only recover the amount accepted as payment.[37] Thus, Defendant argues that the Court should grant summary judgment for Defendant to the extent Plaintiff seeks claims for cure and past medical expenses in excess of $34,616.26.[38]

Defendant further argues that Plaintiff has not provided any evidence that Scott "sustained any wage loss prior to his death," and therefore asks the Court to grant summary judgment as to Plaintiff's claims for Scott's past wage loss.[39]

Lastly, Defendant argues that Plaintiff has not provided any evidence that Scott was due "found," as Scott did not reach maximum medical cure.[40] Therefore, Defendant argues it is entitled to summary judgment as to Plaintiff's claim to recover "found."[41]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[42] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations

---

[37] *Id.*

[38] *Id.*

[39] *Id.* at 2.

[40] *Id.* at 3.

[41] *Id.*

[42] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

or weighing the evidence."[43] All reasonable inferences are drawn in favor of the nonmoving party.[44] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[45] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[46] The nonmoving party may not rest upon the pleadings.[47] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[48]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[49] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[50] If the moving party satisfies its initial burden, the burden shifts to

---

[43] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[44] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000))

[45] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[46] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[47] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[48] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[49] *Celotex*, 477 U.S. at 323.

[50] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[51] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[52]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[53] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[54]

## IV. Analysis

The Complaint in this case requested the following in damages:

a. Past and future physical pain and suffering;

b. Past and future mental and emotional pain and suffering;

c. Fear of impending doom;

d. Past medical expenses;

e. Past maintenance, cure and found;

f. Past and future lost wages and work benefits;

g. Loss of economic support;

h. Loss of enjoyment of life;

---

[51] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[52] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[53] *Little*, 37 F.3d at 1075 (internal citations omitted).

[54] *Morris*, 144 F.3d at 380.

i. Loss of household services;

j. Loss of support;

k. Funeral and burial expenses; and

l. Other elements of damages to be shown at the trial of this matter.

In the instant motion, Defendant seeks partial summary judgment on Plaintiff's claims for (1) past medical expenses, (2) past maintenance, cure, and found, (3) funeral and burial expenses, and (4) nonpecuniary damages.

The Court begins by noting that the Plaintiff concedes that her request for funeral and burial expenses should be dismissed.[55] Therefore, the Court will grant the motion as to Plaintiff's request for funeral and burial expenses. Plaintiff further concedes that her request for nonpecuniary damages in the form of Plaintiff's pain and suffering, fear of impending doom, and loss of enjoyment of life, should be dismissed.[56] Plaintiff notes that she intended to request those damages on behalf of Scott, rather than herself personally.[57] Because Defendant only moved for summary judgment on these non-pecuniary damages as to Plaintiff personally,[58] and does not argue that Plaintiff cannot recover these damages on behalf of Scott, the Court will grant the motion to the extent it seeks dismissal of Plaintiff's request for nonpecuniary damages of pain and suffering, fear of impending doom, and loss of enjoyment of life based on Plaintiff herself. Plaintiff may, at trial,

---

[55] Rec. Doc. 43 at 11.

[56] *Id.*

[57] *Id.* at 11–12.

[58] Rec. Doc. 28-1 at 13.

provide evidence as to Scott's pain and suffering, fear of impending doom, and loss of enjoyment of life.[59]

As to medical expenses, Defendant moved for summary judgment on any claims for past medical expenses because "there is no evidence that Plaintiff is now liable for any such costs incurred as a result of Mr. Scott's COVID-19 diagnosis or treatment."[60] In opposition, Plaintiff provides evidence of an outstanding bill for $3,580.65 related to Scott's medical care, and provides evidence that Scott's health insurance provider made various other payments for Scott's medical care.[61] Plaintiff argues that under the collateral source rule, she is entitled to recover the amount paid by Scott's health insurance provider on his behalf.[62] The collateral source rule "bars a tortfeasor from reducing the quantum of damages owed to a plaintiff by the amount of recovery the plaintiff receives from other sources of compensation that are independent of (or collateral to) the tortfeasor."[63] In reply, Defendant "does not dispute that applicability of the collateral source rule for medical expenses paid by Robert Scott's health insurer."[64] However, Defendant states that it "does move to dismiss any claims brought by plaintiff seeking past medical expenses in excess

---

[59] *McBride*, 853 F.3d at 781 ("Under the Jones Act, a plaintiff can recover damages for pre-death pain and suffering."); *De Centeno v. Gulf Fleet Crew, Inc.*, 798 F.2d 138, 141 (5th Cir. 1986) ("Recoverable items include loss of support from [decedent]'s past and future earnings; loss of [decedent]'s household services; loss of parental nurture and guidance of his minor children until the age of majority; and recovery for [decedent]'s predeath pain and suffering.").

[60] Rec. Doc. 28-1 at 7.

[61] Rec. Doc. 43 at 8.

[62] *Id.* at 9–11.

[63] *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 381 (5th Cir. 2012) (quoting *Davis v. Odeo, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994)).

[64] Rec. Doc. 60 at 1.

of the sums accepted in payment of the services by his providers."[65] Defendant contends that because the evidence demonstrates that Scott's insurer paid $31,035.61 and Plaintiff has an outstanding bill for $3,580.65, the Court should grant summary judgment as to Plaintiff's claim for past medical expenses in excess of $34,616.26.[66]

On a motion for summary judgment it is the moving party's burden to "inform[] the district court of the basis for its motion."[67] Defendant moved for summary judgment on Plaintiff's claims for past medical expenses because "there is no evidence that Plaintiff is now liable for any such costs incurred as a result of Mr. Scott's COVID-19 diagnosis or treatment."[68] After conceding in the reply that Plaintiff does have an outstanding bill for $3,580.65 and that Plaintiff would be entitled to recover the amounts paid by Scott's health insurance provider, Defendant changes its request and asks the Court to grant summary judgment as to past medical expenses in excess of $34,616.26.[69] Although Defendant suggests that Plaintiff agrees that this is the total amount of recoverable medical expenses, the Court will not grant summary judgment on the basis of an argument made for the first time in reply, which Plaintiff has not had an opportunity to respond to. If Plaintiff does in fact agree that $34,616.26 is the total amount of recoverable medical expenses, the parties may stipulate to that at trial.

---

[65] *Id.* at 2.

[66] *Id.*

[67] *Celotex*, 477 U.S. at 323.

[68] Rec. Doc. 28-1 at 7.

[69] Rec. Doc. 60 at 2.

Defendant also moved for summary judgment on Plaintiff's claims for "past maintenance, cure, and found."[70] "Maintenance and cure is an obligation imposed upon a shipowner to provide for a seaman who becomes ill or injured during his service to the ship."[71] "The maritime doctrine of maintenance entitles a seaman injured in the service of his ship to 'food and lodging of the kind and quality he would have received . . . aboard [the] ship.'"[72] Maintenance also includes lost wages.[73] Similarly, "cure entitles an injured seaman to reimbursement for medical expenses and proper treatment and care."[74] These claims are largely subsumed by Plaintiff's claims for medical expenses. Plaintiff characterizes Scott's "medical expenses" as "including costs for treatment[,] observation[,] and emergency rooms[,] as well as 'room and board,' which is plainly listed on the certified billing records."[75] Thus, whether referred to as medical expenses, maintenance, or cure, as discussed above, the Court will deny summary judgment as to the expenses incurred arising out of Scott's medical treatment. However, to the extent that Plaintiff sought to recover wages on behalf of Scott as a subset of "maintenance," the Court will grant summary judgment on that claim because Plaintiff concedes that Defendant paid Scott his "full wages" from July 12, 2020 to his death on July 24, 2020.[76]

---

[70] Rec. Doc. 28-1 at 7.

[71] *McBride v. Estis Well Serv.*, LLC, 853 F.3d 777, 783 (5th Cir. 2017) (quoting *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2000)).

[72] *Hall v. Nobile Drilling (U.S.) Inc.*, 242 F.3d 582, 586 (5th Cir. 2001) (quoting *Tate v. American Tugs, Inc.*, 634 F.2d 869, 871 (5th Cir. 1981)).

[73] *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 413 (2009).

[74] *McBride*, 853 F.3d at 783.

[75] Rec. Doc. 43 at 10.

[76] Rec. Doc. 43-1 at 3.

Lastly, Defendant moved for summary judgment on Plaintiff's request to recover "found." Fifth Circuit caselaw explains that "found" is an "oft-overlooked award in admiralty" that covers the value of future fringe benefits, such as meals aboard a ship, for the period "after maximum cure has been achieved, and the duty to pay maintenance has therefore ended."[77] Although the opposition states that Plaintiff is entitled to recover "found," Plaintiff does not explain the basis for her claim for found nor cite any evidence to support it. Thus, the Court grants summary judgment as to Plaintiff's claim for found.

## V. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment[78] is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** to the extent it seeks summary judgment on Plaintiff's request for (1) funeral and burial expenses; (2) wages as a subset of "maintenance"; (3) damages for Plaintiff's personal pain and suffering, fear of impending doom, and loss of enjoyment of life; and (4) "found." The motion is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA**, this 12th day of July, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[77] *Pickle v. Int'l Oilfield Divers, Inc.*, 791 F.2d 1237, 1242 n. 6 (5th Cir. 1986).

[78] Rec. Doc. 28.

14